<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| CANAM STEEL CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>CHEVRON U.S.A. INC. and<br>CHEVRON ENVIRONMENTAL<br>MANAGEMENT COMPANY,<br><br>    Defendants. | Case No. 2:25-cv-15454 (BRM) (JBC)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendants Chevron U.S.A., Inc. ("Chevron") and Chevron Environmental Management Company's ("CEMC") (collectively, "Chevron") Motion to Dismiss ("Motion") (ECF No. 7) Plaintiff Canam Steel Corporation's ("Canam") Complaint (ECF No. 1) pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Canam filed an Opposition (ECF No. 8), and Chevron filed a Reply (ECF No. 10). This Court has jurisdiction pursuant to 28 U.S.C. § 1332. Having reviewed and considered the parties' submissions filed in connection with the motion and having declined to hold oral argument pursuant to Rule 78(b), for the reasons set forth below and for good cause shown, Chevron's Motion is **GRANTED IN PART** and **DENIED IN PART**.

I.    **BACKGROUND**

    A.    **Factual Background**

For the purpose of this Motion, the Court accepts the factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable to the plaintiff. *See Phillips*

*v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

Canam operates a specialty steel manufacturing facility at 14 Harmich Road, South Plainfield, New Jersey. (ECF No. 1 ¶ 5.) Chevron owns adjacent property at 800 Metuchen Road where it allegedly manufactured organochloride pesticides ("OCPs"), which migrated onto Canam's property, contaminating the soils under a building, a south parking lot, and portions of a north parking lot. (*Id.* ¶ 8.) Canam never manufactured, used, stored, or disposed of OCP at its property. (*Id.* ¶ 11.) Chevron is the Responsible Party to investigate and remediate OCP contamination at Canam's property. (*Id.* ¶ 9.) Chevron is obligated to investigate and remediate the Canam Property under ISRA Case No. E88205 and a certain Environmental Investigation/Access and Reimbursement Agreement dated November 30, 2016 (the "Access Agreement") between Canam and Chevron.[1] (*Id.* ¶ 10.)

The Access Agreement provides in relevant part:

> For the purposes of this Agreement, Chevron and CEMC are only responsible for the Incremental Costs associated with the disposal of impacted soils, asphalt and/or concrete. Incremental Costs are the additional costs to dispose of soil, asphalt and/or concrete resulting from the Contamination that otherwise would not have been incurred by Canam or the current property owner.

(ECF No. 7-3 at 6.) It further provides for Chevron to reimburse Canam for costs relating to sampling. (*Id.* at 3, 5–6.) Canam agreed to provide Chevron and Chevron's sampling and

---

[1] Canam's Complaint alleges the terms of the Access Agreement are confidential. (ECF No. 1 ¶10.) Because Chevron attached the Access Agreement to its Motion to Dismiss and Canam relied on it in the Complaint, the Court will consider the contract. *See In re Burlington Coat Factory*, 114 F.3d at 1426.

remediation contractors with access to Canam's property. (*Id.* at 4.) Canam also agreed to execute a Deed Notice "based upon the satisfactory delineation to the residential Soil Remediation Standard as approved by [New Jersey Department of Environmental Protection ("NJDEP")] in compliance with all applicable regulations." (*Id.* at 5.) Finally, the Access Agreement contains an indemnification provision with two clauses: "4.1 Chevron and CEMC shall indemnify and hold Canam harmless from any third party claims brought against Canam as a result of Chevron's access to the Canam property as set forth in Paragraph 3.1 and described in attachment B (Soil Management Plan)" and "4.2 The indemnification provision in Section 4.1 excludes any claims and remediation costs related to or arising from soil or groundwater contamination at the Canam Property unrelated to Chevron, CEMC or the Site." (*Id.*)

Chevron is allegedly in breach of the Access Agreement by failing to properly investigate and remediate OCP contamination at the Canam Property. (ECF No. 1 ¶ 14.) Canam has undertaken remediation of OCP contaminated soils at its property and, to date, has incurred remediation and related costs of $2,834,606.00. (*Id.* ¶¶ 15–18.) Chevron refuses to reimburse Canam for the cost of the remediation work and has failed to commit to paying for the remaining remediation work. (*Id.*)

### B.    Procedural History

On August 11, 2025, Canam filed its Complaint in the Superior Court of New Jersey, Middlesex County, Law Division, Civil Part, entitled *Canam Steel Corporation v. Chevron U.S.A., Inc.*, Docket No. MID-L-5823-25. (Not. of Rem. (ECF No. 1) ¶ 1.) Canam's Complaint asserts five causes of action: (1) declaratory judgment; (2) breach of contract; (3) common law indemnity; (4) strict liability under the New Jersey Spill Act ("N.J. Spill Act"); and (5) treble damages under

the N.J. Spill Act. (ECF No. 1 ¶¶ 22–57.) On September 11, 2025, Chevron removed this action to federal court pursuant to 28 U.S.C. § 1332. (*Id.* ¶¶ 3–5.)

On October 2, 2025, Chevron filed its Motion to Dismiss the Complaint. (ECF No. 7.) Canam filed a timely Opposition on October 20, 2025. (ECF No. 8.) Chevron filed its Reply on October 27, 2025. (ECF No. 10.)

## II.   LEGAL STANDARD

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim [for] relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a

4

defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* In assessing plausibility, the court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible, allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While, generally, the Court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or*

*explicitly relied* upon in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220). However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

### III.    DECISION

Chevron moves to dismiss the Complaint in its entirety, arguing Canam fails to state any claim for relief. (ECF No. 7.) Canam counters it has sufficiently alleged facts establishing each of its claims. (ECF No. 8.) The Court finds Canam has failed to allege required elements of its breach of contract claim and treble damages under the New Jersey Spill Act claim, but has sufficiently alleged its declaratory judgment claim, common law indemnity claim, and New Jersey Spill Act claim for compensatory damages, as explained below.

As a court sitting in diversity jurisdiction, the Court would normally conduct a choice-of-law analysis to determine which state's law applies; however, no party disputes that New Jersey law should govern all claims in this case, and all parties briefed all claims applying New Jersey law. (*See generally* ECF No. 7-1; ECF No. 8; *see also* ECF No. 7-3 at 9 (specifying New Jersey law applies in the choice of law clause in the Access Agreement).) Accordingly, the Court will apply New Jersey law. *See UBI Telecom Inc. v. KDDI Am., Inc.*, Civ. A. No. 13-1643, 2014 WL 2965705, at *9 (D.N.J. June 30, 2014) (holding "[w]hen the parties agree upon which state's law applies . . . the Court need not conduct [a] choice-of-law inquiry"); *Butera v. Honeywell*, Civ. A. No. 18-13417, 2020 WL 64568, at *2 (D.N.J. Jan. 6, 2020); *Cole v. NIBCO, Inc.*, Civ. A. No. 13-7871, 2015 WL 2414740, at *5 (D.N.J. May 20, 2015); *Stratis v. BMW of N. Am., LLC*, No. 2:22-CV-6929, 2023 WL 3092188, at *6 (D.N.J. Apr. 26, 2023).

### A.    Declaratory Judgment

Chevron moves to dismiss Count One for declaratory judgment, arguing the Court cannot rewrite the terms of the contract, which does not require Chevron to remove soil from Canam's property unless said soil is contaminated above a certain threshold. (ECF No. 7-1 at 19.) Canam responds its Complaint alleges specific contractual duties Chevron failed to fulfill and Chevron had independent ISRA obligations to Canam which were operationalized by the Access Agreement, entitling Canam to declaratory judgment as to Chevron's liability. (*See* ECF No. 8 at 3–4; ECF No. 1 ¶¶ 22–30.)

Federal courts sitting in diversity will treat a prayer for declaratory judgment brought under state law "as though it had been filed under the [federal Declaratory Judgment Act]." *Tumi, Inc. v. Factory Mut. Ins. Co.*, Civ. A. No. 21-2752, 2021 WL 4170051, at *1 n.3 (D.N.J. Sept. 14, 2021) (citing *BCB Bancorp, Inc. v. Progressive Cas. Ins. Co.*, Civ. A. No. 13-1261, 2013 WL 8559731, at *3 (D.N.J. Oct. 9, 2013)). The Declaratory Judgment Act ("DJA") allows federal courts to "declare the rights and other legal relations of any interested party seeking such [a] declaration." 28 U.S.C. 2201(a). The DJA provides "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C.A. § 2201(a).

The Third Circuit directs "[d]eclaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct . . . . Declaratory judgments are not meant simply to proclaim that one party is liable to another." *Andela v. Admin. Off. of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014); *see also Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) ("Declaratory judgment is inappropriate solely to adjudicate past conduct . . . [n]or is

7

declaratory judgment meant simply to proclaim that one party is liable to another."). Courts in the Third Circuit will also "routinely dismiss declaratory judgment claims [that] are duplicative of breach of contract claims." *Reliable Paper Recycling, Inc. v. Helvetia Glob. Sols., Ltd.*, Civ. A. No. 23-22124, 2024 WL 1461346, at *4 (D.N.J. Apr. 4, 2024); *see Vincent Cusumano Architect P.C. v. Berkshire Hathaway Direct Ins. Co.*, Civ. A. No. 23-22970, 2025 WL 957699, at *4 (D.N.J. Mar. 29, 2025) (holding "declaratory judgment claim cannot survive because it is duplicative of [the] breach of contract claim").

The declaratory judgment claim[2] for "declar[ing] the rights of the parties and direct[ing] Chevron to comply with the Access Agreement" is indeed duplicative of a breach of contract claim. (ECF No. 1 ¶ 29.) Even if it were not duplicative of other claims, however, Canam's Complaint explicitly seeks "a declaration that Chevron is liable to Canam for all costs incurred." (ECF No. 1 ¶ 23.) This is exactly the kind of adjudication of liability inappropriate for declaratory judgment. *See Corliss*, 200 F. App'x at 84.

Accordingly, Chevron's Motion to Dismiss the declaratory judgment claim is **GRANTED.**

### B.     Breach of Contract

Chevron contends the plain meaning of the contract as alleged by Canam did not require Chevron to dispose of the contaminated soils at Canam's property. (ECF No 7-1 at 19.) Chevron further contends Canam failed to allege that it performed its own obligations under the contract. (*Id.* at 21.) Canam responds the contract expressly required Chevron to remediate Canam's property and reimburse related costs. (ECF No. 8 at 3.) Canam alleges in response that Chevron

---

[2] No party briefed the declaratory judgment standard, nor how the particulars of this case would apply to the standard. Chevron merely raised the issue by way of its argument for dismissal of the breach of contract claim and categorized its request for dismissal of the declaratory judgment claim as a part of its breach of contract argument. (*See* ECF No. 7-1 at 18–23.) Notwithstanding, the Court decides the motion pursuant to R. 12(b)(6), applying the proper standard.

was already subject under ISRA to perform the remediation or reimburse Canam, and Canam alleges it fully performed its obligations under the contract, but Chevron's material breach excused Canam's further performance. (ECF No. 8 at 3–6.) Chevron replies that Canam did not allege it removed any soil contaminated above the amount to which the parties contractually agreed and Canam did not specifically allege facts that Chevron violated any particular ISRA provision and instead asserted conclusory allegations. (ECF No. 10 at 4–5.)

To plead a cause of action for a breach of contract, a plaintiff must allege: "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007).

Here, Canam fails to plead that it performed its contractual obligations. (ECF No. 1 ¶¶ 31–35.) While Canam asserts, in its opposition, that any performance was excused by Chevron's material breach, this is insufficient.[3] The allegation that it fully performed its obligations or was excused from doing so is not in the Complaint, and Canam cannot amend its pleading through its opposition brief. *See Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").[4] This alone is fatal to Canam's claim for breach of contract. Chevron's other statutory

---

[3] Insofar as Canam argues it had no affirmative obligations and was instead required only to coordinate with Chevron and had no opportunity to do so, Canam also has not asserted or alleged a unilateral contract existed, and so the Court will not consider Canam's breach of contract claim under that analysis. (*See* ECF No. 8 at 7; ECF No. 1 ¶¶ 31–35.)

[4] While it is not the basis of the Court's decision, the Court notes Canam's Complaint is rather bare bones on its factual allegations overall, for example, setting forth no allegations about the timeline or steps of Canam's remediation efforts, the quality of the soil removed, or communications between the parties regarding sampling, notice, or remediation after the agreement was executed. (*See generally* ECF No. 1.)

obligations are immaterial to the analysis.

Accordingly, Chevron's Motion to Dismiss the breach of contract claim is **GRANTED** without prejudice.

### C.    Common Law Indemnity

Chevron argues the common law indemnity claim fails as a matter of law because Canam fails to allege a defined contractual or statutory obligation Chevron violated, and the common law claim is not available when the contract governs the obligations between the parties. (ECF No. 7-1 at 24.) Canam argues the agreement between the parties was not a blanket release of claims and Chevron's breaches of obligations owed fall outside of the scope of the agreement. (*See* ECF No. 8 at 11–12.)

"New Jersey courts interpret indemnity agreements in accordance with the rules of contracts, and have typically demanded that they clearly set forth the intentions of the parties." *McFadden v. United States*, Civ. A. No. 13-5756, 2016 WL 589681, at \*7 (D.N.J. Feb. 11, 2016); *see Englert v. The Home Depot*, 911 A.2d 72, 77 (App. Div. 2006) (holding that, since the indemnification "clause [was] ambiguous, [. . .] the clause should be strictly construed against the indemnitee"); *Huck v. Gabriel Realty*, 346 A.2d 628, 632 (1975) (clarifying that, when determining the scope of an indemnification agreement, the court must apply "strict construction rules"); *Longi v. Raymond-Commerce Corp.*, 113 A.2d 69, 74 (App. Div. 1955) (explaining that, in interpreting an indemnity agreement, "it is to be strictly construed and not extended to things other than those therein expressed"); *George M. Brewster & Son, Inc. v. Catalytic Constr. Co.*, 109 A.2d 805, 810 (1954) (indicating that, "contracts of indemnity, like all other contractual arrangements, are to receive a reasonable construction to serve and not subvert the general design of the stipulation"). Otherwise, "[t]he right to common-law indemnity arises 'without agreement,

and by operation of law to prevent a result which is regarded as unjust or unsatisfactory.'" *Capitol First Corp. v. Todd*, Civ. A. No. 04-6439, 2006 WL 3827329, at *12 (D.N.J. 2006) (citations omitted).

Here, the indemnification provision in its entirety states, "Chevron and CEMC shall indemnify and hold Canam harmless from any third party claims brought against Canam as a result of Chevron's access to the Canam property as set forth in Paragraph 3.1 and described in attachment B (Soil Management Plan)" and "[t]he indemnification provision [above] excludes any claims and remediation costs related to or arising from soil or groundwater contamination at the Canam Property unrelated to Chevron, CEMC or the Site." (ECF No. 7-3 at 5.) It is not apparent from the plain reading of the clause that the parties intended for this provision to set forth all of the indemnity obligations between the parties, rather than a more limited obligation to indemnify Canam from third-party claims in an agreement concerning the logistics of sampling contaminated soil. Chevron's argument as to the interpretation of the scope of the clause is an argument for summary judgment, not a motion to dismiss. Canam seeks indemnification not only for Chevron's "failure to comply with the Access Agreement," but also "failing to comply with ISRA or [to] otherwise clean up the environmental contamination it caused at the Canam property." (ECF No. 1 ¶ 39.) Because it is plausible to conceive of the indemnification provision as not reaching all of the harms alleged by Canam, Canam's claim survives Chevron's arguments for dismissal.

Accordingly, Chevron's Motion to Dismiss the common law indemnity claim is **DENIED**.

### D.    Strict Liability Under the N.J. Spill Act

Chevron argues the strict liability under the N. J. Spill Act claim fails because Canam has not alleged it obtained written approval from NJDEP for its cleanup and removal costs. (ECF No. 7-1 at 27.) Canam responds the statute does not limit Canam's recovery to cleanup and removal

11

costs alone, and only indirect costs need prior written approval from NJDEP, not direct costs as alleged in the Complaint. (ECF No. 8 at 13–16.)

The N.J. Spill Act provides, in relevant part, "any person who has discharged a hazardous substance, or is in any way responsible for any hazardous substance, shall be strictly liable, jointly and severally, without regard to fault, for all cleanup and removal costs no matter by whom incurred." N.J. Stat. Ann. § 58:10-23.11g. It further defines "cleanup and removal costs" as

> all costs associated with a discharge, incurred by the State or its political subdivisions or their agents or any person with written approval from the department in the: (1) removal or attempted removal of hazardous substances, or (2) taking of reasonable measures to prevent or mitigate damage to the public health, safety, or welfare, including but not limited to, public and private property, shorelines, beaches, surface waters, water columns and bottom sediments, soils and other affected property, including wildlife and other natural resources . . . .

N.J. Stat. Ann. § 58:10-23.11b. A party is responsible for a discharge if it owned the property at the time of the discharge and there is a reasonable nexus between the discharge and the contamination of the site. *Litgo N.J. Inc. v. Comm'r N.J. Dep't of Envtl. Prot.*, 725 F.3d 369, 392 (3d Cir. 2013). In an action for contribution, the plaintiff "need prove only that a discharge occurred for which the contribution defendant or defendants are liable." N.J. Stat. Ann. § 58:10–23.11f(a)(2)(a). As for any pleading requirement regarding written NJDEP approval:

> It is unclear, however, when in the course of litigation a party is required to receive written approval of cleanup costs from the NJDEP, and, accordingly, it is unclear that in order to maintain a claim for cleanup costs an approval in writing from the NJDEP must be set forth in an initial pleading. The caselaw appears to have addressed the written-approval requirement at the summary judgment stage.

*Giordano v. Solvay Specialty Polymers USA, LLC*, 522 F. Supp. 3d 26, 36 (D.N.J. 2021).

In light of the ambiguity as to whether a party must plead written approval from NJDEP, this Court will not dismiss Canam's pleading for the lack of this allegation. Canam has otherwise alleged the basic elements of an N.J. Spill Act claim by alleging Chevron caused OCP contaminated soil to be discharged, contaminating the soil and groundwater of the Canam property, then failed to remediate such discharges. (ECF No. 1 ¶¶ 46–48.)

Accordingly, Chevron's Motion to Dismiss strict liability under the N.J. Spill Act claim is **DENIED.**

### E.      Treble Damages Under the N.J. Spill Act

Chevron argues the treble damages[5] under the N.J. Spill Act claim should be dismissed because Canam has failed to allege any of the requisite statutory elements. (ECF No. 7-1 at 33.) Canam contends the modern trend in the applicable case law does not require prior NJDEP approval. (ECF No. 8 at 16–17.) Canam further contends its Complaint "touches upon" each of the elements and "the law has moved away from rigid, procedural prerequisites and toward a practical rule." (*Id.* at 18.) Chevron replies Canam's Complaint fails to even allege Chevron was a subject of an NJDEP direct directive and that Canam provides no authority for the proposition that the law has moved away from requiring allegations of the statutory elements. (ECF No. 10 at 14–15.) Chevron further distinguishes the cases Canam cites as applying to NJDEP enforcement actions, not private parties seeking contribution under the N.J. Spill Act. (*Id.* at 15.)

---

[5] Chevron specifically only addresses Canam's petition for treble damages in connection with the fifth count in the Complaint, and appears to address its arguments for dismissal of Canam's petition for contribution under the N.J. Spill Act in its arguments for dismissal of Canam's fourth count for strict liability. (ECF No. 7-1 at 27–33.) Notwithstanding the mismatch, Canam has plead the required elements for contribution, namely, "only that a discharge occurred for which the contribution defendant or defendants are liable." N.J. Stat. Ann. § 58:10–23.11f(a)(2)(a); (ECF No. 1 ¶¶ 53–57).

The N.J. Spill Act allows an action for contribution seeking treble damages upon a finding from a court ruling:

> (a) the contribution defendant is a person who was named on or subject to a directive issued by the department, who failed or refused to comply with such a directive, and who is subject to contribution pursuant to this subsection;
> (b) the contribution plaintiff gave 30 days' notice to the contribution defendant of the plaintiff's intention to seek treble damages pursuant to this subsection and gave the contribution defendant an opportunity to participate in the cleanup;
> (c) the contribution defendant failed or refused to enter into a settlement agreement with the contribution plaintiff; and
> (d) the contribution plaintiff (i) on or after the date of enactment of P.L.2009, c. 60 (C.58:10C-1 et al.), commenced remediation of the site and provided written notice to the department that the contribution plaintiff is remediating or has remediated the property pursuant to the provisions of section 30 of P.L.2009, c. 60 (C.58:10B-1.3), or (ii) entered into an agreement with the department to remediate the site.

N.J. Stat. Ann. § 58:10-23.11f(a)(3). *See Cyprus Mines Corp. v. M & R Indus., Inc.*, Civ. A. No. 14-04590, 2015 WL 1469529, *7 (D.N.J. Mar. 30, 2015) (applying the four statutory elements for treble damages on a motion for default judgment).

Here, Canam has only pled the elements for a claim for contribution under N.J. Stat. Ann. § 58:10-23.11f(a)(2), not for a claim for treble damages under N.J. Stat. Ann. § 58:10-23.11f(a)(3). (ECF No. 1 ¶¶ 53–57.) There is no allegation in the Complaint that Chevron "was named on or subject to a directive issued by [NJDEP]," nor any allegation of Chevron violating said directive. (*See generally id.*) There is no allegation of Canam providing Chevron 30 days' notice of Canam's intention to seek treble damages. (*See generally id.*) There is no allegation of Chevron failing to or refusing to enter into a settlement agreement with Canam; on the contrary, an agreement entitled "Settlement Communication" allegedly forms the basis of Canam's breach of contract claim. (*See generally id.*; *see* ECF No. 7-3 at 1.)

Furthermore, Canam cites to several cases for general propositions about the broad aims and scope of the N.J. Spill Act, but Chevron is correct in distinguishing those cases as enforcement actions by NJDEP and not contributions actions by private parties. The plain meaning of the statute requires these specific elements. N.J. Stat. Ann. § 58:10-23.11f(a)(3). Contrary to Canam's argument of the law having "moved away" from these requirements, the most recent case cited by Canam in its Opposition regarding treble damages applied the four factors in finding the movant met their burden on a default motion. *See Cyprus Mines Corp.*, 2015 WL 1469529 at *7. Therefore, Canam's argument of not needing to plead these factors "strictly" and simply "touch[ing] upon" the elements is meritless.

Accordingly, Chevron's Motion to Dismiss the treble damages portion of the N.J. Spill Act claim is **GRANTED**.

## IV.    CONCLUSION

For the reasons set forth above, Chevron's Motion to Dismiss (ECF No. 7) the Complaint pursuant to Rule 12(b)(6) is **GRANTED IN PART** and **DENIED IN PART**, as follows: Counts One, Two, and the treble damages portion of Count Five (misplead as Seven) of the Complaint (ECF No. 1) are **DISMISSED WITHOUT PREJUDICE**. The Court permits Canam thirty (30) days to file an amended complaint limited to curing the deficiencies addressed herein. Failure to do so will automatically result in a dismissal with prejudice. An appropriate order follows.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated: April 21, 2026

15